IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| GARETH ALEXANDER BARAN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | CIVIL ACTION 07-0125-WS-M |
| ) | |
| SUSAN ELIZABETH BEATY, ) | |
| ) | |
| Respondent. ) | |

**ORDER**

This action is before the Court on Petitioner's Motion for New Trial, or in the alternative, Motion to Alter or Amend Judgment (doc. 15). The Motion has been briefed and is ripe for disposition at this time.[1]

**I.     Background.**

On February 16, 2007, petitioner Gareth Alexander Baran filed a Petition (doc. 1) under the International Child Abduction Remedies Act, 42 U.S.C. §§ 11601 *et seq.* ("ICARA"), implementing the Hague Convention on the Civil Aspects of International Child Abduction, T.I.A.S. No. 11,670, 1343 U.N.T.S. 89 (Oct. 25, 1980) (the "Convention"). The stated purpose of the Petition was to compel the return of Baran's infant son, Samuel Aidan Beaty Baran ("Sam"), to Australia, where Baran resides and where Sam was born in March 2006. Sam spent the first five months of his young life living with his parents, Baran and respondent Susan Elizabeth Beaty, in Altona, Victoria, Australia, until Beaty fled from Australia and brought him to live in Daphne, Alabama, in August 2006 without Baran's knowledge or consent.

After the Petition was filed, the parties stipulated to a preliminary injunction restricting

---

[1]     Petitioner requests oral argument on the Motion. (Motion, at 14.) The undersigned is of the opinion, after careful review of the parties' briefs and the court file, that oral argument would not provide substantial assistance in resolving the issues presented in the Motion. *See* Local Rule 7.3 (providing that "the court may in its discretion rule on any motion without oral argument"). Accordingly, the request for oral argument is **denied**.

Sam's geographic movement. On February 23, 2007, the undersigned entered an Order (doc. 10) setting this matter for a "final evidentiary hearing" on March 22, 2007. The February 23 Order placed the parties on notice that they were "expected to be ready at that time to present any evidence and argument they deem appropriate in support of their respective positions as to the Petition, bearing in mind the particular evidentiary burdens set forth in 42 U.S.C. § 11603(e)." (Doc. 10, at 2.) The Court set this final evidentiary hearing so soon after the initiation of this lawsuit in recognition of Article 11 of the Convention, which requires judicial authorities to act expeditiously in proceedings for the return of children, and generally provides that a petition for return of a child should be decided within six weeks after it is filed. In any event, neither party ever requested a continuance of the March 22 setting or otherwise suggested that they could not be prepared to present all evidence and argument at that time.

The final evidentiary hearing was held as scheduled over a five-hour span on March 22, 2007. Petitioner Baran neither attended nor offered any explanation for his absence; however, his counsel did submit a copy of an affidavit dated September 21, 2006 that touched on certain issues of concern in this litigation, as well as certain other exhibits (photographs, affidavits, etc.). For her part, respondent Beaty attended the hearing and testified in support of her two defenses to the Petition, to-wit: consent and grave risk of harm. Respondent also offered the live testimony of her mother, Sharron Beaty, as well as certain photographs, transcripts, tape recordings, and other exhibits.

On March 28, 2007, some 40 days after the Petition was filed and six days after the final hearing, the undersigned entered a 23-page Order (doc. 12), including findings of fact and conclusions of law, denying the Petition. In particular, the Court made the following legal determinations: (i) Baran had satisfied his burden of establishing by a preponderance of the evidence that Sam had been wrongfully removed or retained within the meaning of ICARA and the Convention; (ii) Beaty had failed to carry her burden under ICARA of showing by a preponderance of the evidence that Baran had consented to the wrongful removal and retention of Sam in the United States; and (iii) Beaty had demonstrated by clear and convincing evidence that Sam would face a grave risk of physical or psychological harm if, as Baran had expressly requested, Sam were placed in his care in Australia pending the outcome of an Australian custody proceeding.

Nearly six pages of the March 28 Order were devoted to the topic of undertakings. At the close of the March 22 hearing, after all presentation of evidence had concluded and the parties had made their oral arguments, and after the Court had taken a brief recess to consider the evidence, Baran's lawyer for the first time mentioned the concept of undertakings, which he labeled a "procedural issue" rather than an evidentiary issue. In particular, he asked to be given an opportunity, at some unspecified future date, to put on evidence of possible conditions that the Court might impose in order to safeguard and protect Sam upon his return to Australia. Based on an extensive discussion of extant authorities from other jurisdictions (the Eleventh Circuit not having had occasion to consider the issue of undertakings in the ICARA sphere), the Court found that this was not a case in which undertakings would be appropriate. The heart of the reasoning on this point was as follows:

> "Because the Court finds that Sam is in grave danger of incurring physical or psychological harm if he is returned to Australia, and pursuant to the rationale of the First and Seventh Circuits and the State Department guidance, it is not appropriate to consider undertakings in this case. To hold otherwise would be to contribute to the erosion of the Article 13(b) exception from the Convention in the name of expedience, all the while unacceptably jeopardizing Sam's safety. This Court simply cannot conclude with any degree of confidence that placing even stringent conditions on Sam's return to Australia would effectively insulate him from Baran's wrath and insure his safety. Even if it could, it is not appropriate for this Court to tell Australian authorities what to do, to assume that Australian authorities can or will enforce conditions imposed by this Court, or to engage itself in managing the minutiae of custody, maintenance, visitation, and other rights of the parties in Australia during the interim of any Australian custody proceedings."

March 28 Order (doc. 12), at 20-21 (footnote omitted).[2]

Alternatively, the March 28 Order explained that even if undertakings might otherwise be appropriate in this case, Baran's request was untimely because he had neglected to broach the subject until the close of the final hearing, and even then sought to reopen these proceedings at some indefinite future date for that purpose. Considering all of the equities and surrounding

---

[2] In so opining, the undersigned placed considerable weight on the discussion in *Van De Sande v. Van De Sande*, 431 F.3d 567 (7th Cir. 2005) and *Danaipour v. McLarey*, 286 F.3d 1 (1st Cir. 2002), as well as guidance from the United States Department of State that undertakings may be ill-suited for "grave risk of harm" circumstances.

circumstances (including the facts that Baran chose when to bring this proceeding, that Baran had nearly a month to gather his evidence after learning that Beaty intended to pursue a grave risk of harm defense, that Baran never requested a continuance to develop evidence on undertakings, that this Court is constrained by Article 11 of the Convention to reach a final decision on the Petition within six weeks after its filing, that the interests of justice favor efficient resolution of disputes without a multiplicity of hearings, that the interests of the parties favor a prompt resolution of their dispute, and that the child's interests favor the prompt initiation and disposition of custody proceedings, wherever they may occur, so that he may soon be relieved of the burden of being the object of his parents' tug-of-war contest), the Court concluded that Baran was not entitled to a second bite at the apple via a second evidentiary hearing on his Petition and that his dilatory attempt to litigate the question of undertakings would not be permitted.

Based on the Court's finding that Beaty had established that Sam would face a grave risk of physical or psychological harm if he were returned to Australia, the March 28 Order denied the Petition and refused to order the return of Sam to Australia for custody proceedings.

On April 9, 2007, Baran timely filed a Motion for New Trial or, in the alternative, Motion to Alter or Amend Judgment (doc. 15) pursuant to Rule 59. This Motion ascribed the following four assignments of error to the March 28 Order: (1) the "grave risk" determination was against the weight of the evidence; (2) the Court erred in refusing to allow Baran to present evidence of undertakings; (3) the Court erred in failing to consider evidence presented at the hearing that Sam could be safely returned to Australia; and (4) Baran has certain newly discovered evidence that Sam's safety could be protected if he were returned to Australia.

## II.     Legal Standard.

Baran's Motion is brought under Rule 59(a), Fed.R.Civ.P., which provides, in pertinent part, as follows: "On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment." *Id.* The Rule further provides that a new trial may be granted "in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity." *Id.* Baran's Motion is also couched as a motion to alter or amend judgment pursuant

to Rule 59(e), Fed.R.Civ.P. This designation is more accurate, inasmuch as Baran is not contesting the fairness of the final evidentiary hearing or suggesting that the hearing itself was marred by error; rather, he simply seeks modification of the factual findings and legal conclusions made by this Court following that hearing, and supplementation of the record with additional facts that he never attempted to introduce into evidence at the hearing.

Although Rule 59 does not specify the circumstances under which relief on a motion to alter or amend judgment may be granted, courts have generally granted such requests only in the following circumstances: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Aird v. United States*, 339 F. Supp.2d 1305, 1312 (S.D. Ala. 2004) (citations omitted); *see also McNair v. Campbell*, 315 F. Supp.2d 1179, 1182 (M.D. Ala. 2004) (Rule 59(e) motion may be granted for manifest errors of law or fact on which judgment is based, newly discovered or previously unavailable evidence, manifest injustice in the judgment, or intervening change in controlling law). "The decision to alter or amend judgment is committed to the sound discretion of the district judge." *American Home Assur. Co. v. Glenn Estess & Associates, Inc.*, 763 F. 2d 1237, 1238-39 (11th Cir. 1985). Thus, "[e]ven when a movant has stated legally cognizable grounds for relief from a final judgment, such relief is granted rarely and only in extraordinary circumstances." *Jacobs v. Electronic Data Systems Corp.*, 240 F.R.D. 595, 600 (M.D. Ala. 2007) (explaining that in evaluating such requests, courts weigh competing interests of finality, conservation of judicial resources, adjudication on merits, and doing justice).

An important limitation on this kind of motion, however, is that it "may not be used to relitigate old matters or to present arguments or evidence that could have been raised prior to judgment." *McNair*, 315 F. Supp.2d at 1182; *see also Michael Linet, Inc. v. Village of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005) (movant "cannot use a Rule 59(e) motion to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment"); *O'Neal v. Kennamer*, 958 F.2d 1044, 1047 (11th Cir. 1992) ("Motions to amend should not be used to raise arguments which could, and should, have been made before the judgment was issued."); *Aird*, 339 F. Supp.2d at 1312 (relief on motion to alter or amend judgment "is not warranted where a party simply reiterates arguments previously considered and rejected in the underlying ruling"). In that regard, "the moving party will not prevail on a Rule

59(e) motion that introduces previously unsubmitted evidence absent a showing that the evidence was unavailable at the time of the judgment." *Mincey v. Head*, 206 F.3d 1106, 1137 n.69 (11th Cir. 2000).

**III.    Analysis.**

As mentioned *supra*, Baran identifies four grounds for seeking relief from the March 28 Order, to-wit: (a) his contention that the Court's "grave risk" finding was against the weight of the evidence; (b) his contention that the Court erred in failing to allow him to present evidence on undertakings; (c) his contention that the Court erroneously failed to consider evidence presented at the hearing that Sam can be safely returned to Australia; and (d) his contention that he has newly discovered evidence of arrangements available to ensure Sam's safety in Australia. Each of these grounds for relief will be considered in turn.

*A.    "Grave Risk" and the Weight of the Evidence.*

Based on the evidence presented by the parties, the undersigned found that Beaty had "presented overwhelming evidence at the hearing that Sam would face a grave risk of physical or psychological harm if he were left in Baran's care pending Australian custody proceedings." (March 28 Order, at 16.) Among the evidence which the Court considered on this point was testimony from Beaty (and, in many instances, her mother) that: (a) Baran abuses alcohol on a daily or almost-daily basis; (b) Baran is prone to uncontrolled outbursts of rage; (c) Baran was physically and verbally abusive toward Beaty in Sam's presence; (d) Baran physically endangered Sam (both intentionally and unintentionally) while Sam lived with him; (e) Baran repeatedly and pointedly informed Beaty that he did not want Sam, that Sam should have been aborted, that Sam would die if he became an American, and that Beaty could not blame Baran if something happened to Sam; and (f) Baran is only marginally capable of caring for his own basic needs and has no close family members or friends who could be expected to assist in caring for and protecting Sam.

Against this backdrop of often disturbing evidence which the Court heard and deemed credible, Baran contends that the weight of the evidence is to the contrary. In that regard, he points to snippets of evidence that support his position, such as an affidavit statement that Baran's adolescent children from a prior marriage visit and stay with him from time to time without court supervision, that Baran's ex-wife opined in an affidavit that he was a responsible

Case 1:07-cv-00125-WS-M   Document 19   Filed 05/16/07   Page 7 of 13

caring father, and that photographs admitted into evidence show Baran smiling and interacting with Sam. He further argues that Beaty's testimony on the risk of harm was uncorroborated, not credible and largely discredited on cross-examination.

In the undersigned's view, the record evidence as to whether Sam would face a grave risk of harm if he were returned to Baran's care in Australia pending Australian child custody proceedings is not a close call. Whatever defects there may have been in other aspects of her testimony, Beaty was extremely credible on the topic of the risk of harm that Baran poses to Sam. That Baran offered some limited evidence to the contrary in no way diminishes the persuasiveness of Beaty's testimony on this point, nor can the Court agree with petitioner's counsel's assessment that Beaty was not credible. This Court remains of the view that the great weight of the evidence supports its determination on "grave risk."[3]

Next, Baran protests that the evidence of "grave risk" is insufficient unless Beaty proves that the Australian court system was unable or unwilling to protect Sam. Because Beaty did not present evidence concerning the Australian court system's capabilities or shortcomings, Baran contends, the "grave risk" exception cannot apply and the Court erred in finding otherwise.

---

[3] Baran also suggests that the Court is "penalizing" him for "failing to chase the abducting parent across international lines." (Motion, at 2 n.1.) The Court has done no such thing. Rather, the March 28 Order merely pointed out that Baran's absence from the hearing resulted in much of Beaty's evidence going effectively unrebutted and yielding an "asymmetrical evidentiary submission." (Order at 1 n.1.) Thus, far from penalizing Baran, the Court was simply pointing out the obvious truth that when a party is absent from a hearing, that party's ability to rebut the other side's evidence is impaired. In his Motion, Baran himself complains of this state of affairs, suggesting that Beaty exaggerated her testimony because she knew that Baran was not present to expose the truth. (Motion, at 4 n.3.) As for Baran's expressed dismay at the Court's use of the adjective "troubling" in this regard, he apparently misreads the Order. The cited passage of the March 28 Order makes clear that what is troubling is not Baran's absence, *per se*, but his wholly unexplained absence. The Court is well aware that, as petitioner argues, "[t]here are a myriad of reasons why Baran might not attend such a proceeding." (Motion, at 2 n.1.) What troubled the Court, however, is not that Baran failed to attend the hearing, but that he never saw fit to explain his absence from such a serious proceeding, which he initiated and which, by all appearances, he was not precluded from attending by financial limitations, employment commitments or family obligations. Even in his Rule 59 Motion, Baran fails to explain his absence; instead, petitioner's counsel merely offers a host of speculative theories why he might not have been able to come. At any rate, Baran's insinuation that this Court's ruling has penalized him in some way for not attending the hearing is baseless.

(Motion, at 4-5.) But the March 28 Order specifically recognized that the Article 13(b) grave risk defense applies "when the court in the country of habitual residence, for whatever reason, may be incapable or unwilling to give the child adequate protection." (March 28 Order, at 14.) Clearly, then, the correct legal standard was used. The March 28 Order went on to discuss numerous cases in which courts have found the Article 13(b) exception to apply based on the petitioner's violent temper and propensity for physical violence. (*Id.* at 14-17.) The point is simple: If an infant child is being "cared for" by a physically violent, alcohol-abusing father who is prone to fits of rage directed at those whom he loves most and who has repeatedly stated that he does not want the child and that the child should have been aborted, that child is at a grave risk of physical or psychological harm. If that parent would harm the infant in a bout of drunken anger while the child is living with him, how are local authorities to prevent it from happening? The obvious answer is that they may be incapable of doing so, at least as long as the child is in the sole care of that parent, as Baran has requested. That is sufficient for Article 13(b) purposes. A respondent is not required to put on an Australian civics lesson or other detailed proof of the inner workings of a foreign sovereign's judicial system to prove that which is self-evident. Many of the cases cited on pages 14 through 17 in the March 28 Order found that the Article 13(b) exception applies on similar facts, with no indication that the respondents in those cases were required to, or did, put on extensive proof of any shortcomings in the legal systems of the country of habitual residence.[4] The Court therefore cannot agree with Baran that Beaty's

---

[4] To be sure, Baran is correct that under certain circumstances, a court system may intervene to supervise the child, place the child in a foster home, or make other arrangements to insulate the child from the risk of grave harm. However, that inquiry falls squarely under the rubric of undertakings. By conflating the respondent's burden of proving grave risk with the petitioner's burden of establishing undertakings, Baran attempts to shift a burden onto Beaty that she does not bear, as a matter of law. To be perfectly clear, under ICARA and the Convention, Beaty has the burden of proving by clear and convincing evidence that there is a grave risk that Sam's return to the living arrangements proposed by Baran (namely, that Sam reside with him in Australia pending the outcome of custody proceedings in Australia) would expose Sam to physical or psychological harm. This she has done. At that point, the burden rests on Baran to come forward with evidence of undertakings (that is, "an evaluation of the placement options and legal safeguards in the country of habitual residence to preserve the child's safety" during custody proceedings) sufficient to mitigate the grave risk of harm, assuming that undertakings are even appropriate. *See Danaipour v. McLarey*, 286 F.3d 1, 21 (1st Cir. 2002).

evidence was lacking in this regard.

Finally, petitioner faults the "grave risk" finding in the March 28 Order for relying on a series of cases that he maintains are distinguishable. (Motion, at 6-9.) But the March 28 Order never declared that any of the cases recited on pages 16 and 17 are factually on all fours with this case; rather, the Court's view was (and is) simply that those authorities are sufficiently analogous to this case to support a conclusion that the Article 13(b) exception applies. In seeking to distinguish the authorities cited by the March 28 Order, Baran minimizes the extensive evidence of his volatile temperament and violent acts, which included the following incidents occurring within months prior to Beaty's departure: (a) an occasion in which he pinned the pregnant Beaty between the door and the wall, pushing hard against the door and applying considerable pressure to her abdomen; (b) incidents in which he hurled furniture at Beaty; (c) an incident in which he smashed the microwave oven door in anger; (d) an incident in which Baran slapped Beaty so hard that she fell to the ground; (e) a six-hour ordeal just four weeks before Beaty left the country in which Baran threatened to bash her face in, repeatedly swung a portable telephone at her head, and stated that she would never see her family again, all while Beaty held Sam in her arms; and (f) numerous incidents in which Baran was verbally abusive toward Beaty, proclaimed that Sam should have been aborted, and the like. For petitioner to suggest in his Rule 59 Motion that such conduct is somehow *de minimis* or "isolated and remote in time" (as stated in a district court case that he urges this Court to follow) is greatly to understate the severity of the conduct at issue. The Court is of the opinion that it was neither clear error nor manifestly unjust to rely on the cases cited on pages 16 and 17 of the March 28 Order.

### B.   *The Rulings on Undertakings.*

As his second ground for Rule 59 relief, petitioner challenges both of the Court's determinations on the undertakings question, including the ruling that undertakings are inappropriate in this case and the finding that petitioner's efforts to inject the issue of undertakings into these proceedings were untimely.

With respect to petitioner's challenge to this Court's legal determination that it is inappropriate to consider undertakings in this case, little purpose would be served in rehashing this issue here. Pages 18 through 21 of the March 28 Order set forth in detail the Court's reasoning, and the particular authorities on which it relied, in making that determination.

Petitioner disagrees with the undersigned's interpretation of relevant authorities, and cites conflicting caselaw that reasonably supports his position and whose existence this Court specifically acknowledged in footnote 20 of the March 28 Order. There is a lack of uniformity in the federal appellate approaches to the undertakings issue. To date the Eleventh Circuit has not spoken. In the undersigned's view, petitioner's objections to this Court's legal determinations concerning the availability of an undertakings analysis here are far better presented on appeal than on a Rule 59 motion. The March 28 Order represents this Court's view on the propriety of undertakings here, after a careful review of all extant authority on the subject, including the very cases now cited by petitioner. Whatever else may be said, the Court cannot find that its ruling on the question of undertakings constitutes a clear legal error of the type that might give rise to the post-judgment Rule 59 relief that Baran now seeks.

With respect to petitioner's objection to the finding that he raised the issue of undertakings in an untimely manner, the Court remains of the opinion that petitioner unreasonably delayed. The February 23 Order (doc. 10), entered some four weeks prior to the hearing, made clear that the March 22 hearing was to be a "final evidentiary hearing" and set forth the Court's expectation that the parties must be ready at that time "to present any evidence and argument they deem appropriate in support of their respective positions as to the Petition." (February 23 Order, at 2.) Petitioner never asked for more time. Petitioner never said he could not be prepared by that deadline. Yet petitioner came to the hearing with no undertakings evidence, failed to mention undertakings in his oral argument, and waited until the very conclusion of the hearing before articulating his desire to present undertakings evidence at some future hearing at some future date if the Court was willing to afford him "one more bite at the apple," in his words. For the reasons set forth on pages 21 and 22 of the March 28 Order, the Court concluded that it was inappropriate to reopen the record.

Petitioner now seeks to excuse his dilatory invocation of the undertakings issue by suggesting that he had no idea that undertakings would become an issue at this hearing because he "had no way of knowing that Beaty would refuse to travel back to Australia with her infant son." (Motion, at 11.) This statement is unpersuasive. Petitioner cannot legitimately profess surprise at Beaty's emphatic testimony at the hearing that she would not return to Australia with Sam. On September 21, 2006, some five months before this action commenced, Baran submitted

-10-

an Application for Return of Child to the Australian Central Authority.  Under the heading "proposed arrangements for return of the child," Baran wrote "The child should be returned forthwith to me at the family home in Altona, Victoria Australia. ... If the mother [] does not return I am able to look after the said child alone." (Petitioner's Exh. 1, at 4.)  Petitioner thus was clearly considering the contingency that Beaty would refuse to return to Australia with Sam as early as six months prior to the final evidentiary hearing.  For him to contend that he was caught unawares by Beaty's testimony to this effect, so as to justify his belated assertion of the undertakings issue, is simply not credible.[5]  Moreover, petitioner attached to his Petition a copy of a document filed by Beaty in state court in September 2006 wherein she documented several incidents of abuse and stated, "I am very afraid that [Baran] will attempt to come here and take our son back and physically harm us both." (Petitioner's Exh. 18.)  In light of this sentiment, petitioner cannot now be heard to express surprise that Beaty testified that she was unwilling to travel to a place where she would be near a man whom she was "very afraid" would "physically harm" her.

More generally, petitioner's justification is unavailing because he was on notice from the outset of these proceedings that respondent intended to pursue a "grave risk" defense.  Beaty's counsel announced as much in open court on February 23, 2007.  By being on notice that the "grave risk" defense was at issue, petitioner was also squarely on notice that undertakings might be relevant to this dispute because undertakings (if appropriate) are a means by which a grave risk of harm may be mitigated.  Yet he elected to prepare for the March 22 hearing without having any evidence relating to the undertakings question at the ready, and without even mentioning undertakings in his oral argument at the close of all the evidence.  In the judgment of

---

[5] To be clear, the Court is in no way impugning the veracity of petitioner's counsel, who has taken pains to state in his reply brief, "I am not taking a dishonest position with the Court when I assert that it never occurred to me that Susan Beaty would not accompany her infant son back home to Australia." (Reply Brief, at 3-4.)  Be that as it may, it certainly occurred to Baran himself that Beaty might not return to Australia, as evidenced by his September 2006 application.  That Baran may not have conveyed that concern to his lawyer, or that his lawyer may not have followed up concerning that aspect of the September 2006 application, is not a valid basis for prolonging these proceedings and reopening the record to address an issue that could and should have been presented at the March 22 hearing, if it was to be presented at all.

the undersigned, Rule 59 relief is not warranted on this issue because the Court's decision on timeliness is not a clear error of law and does not work a manifest injustice.

        C.      *Purported Failure to Consider Hearing Evidence of Sam's Safety.*

Next, petitioner criticizes the March 28 Order for failing to consider his evidence presented at the hearing that Sam could be safely returned to Australia. In particular, petitioner cites two pieces of evidence that he contends prove that any grave risk to Sam upon his return to Australia could be readily ameliorated. First, he points to Petitioner's Exhibit 15, a one-page document that Baran introduced into evidence at the hearing. This document says nothing about whether Sam would be adequately protected if he were returned to Australia in Baran's sole care, as Baran has requested. Instead, Petitioner's Exhibit 15 is, on its face, an information sheet that merely lists "[a] number of sources of assistance ... available to parents returning to Australia with children under the Hague Convention." (*Id.*) This information sheet is inapposite to the issue of whether Sam will face a grave risk of harm, because it contemplates a situation in which a returning parent needs protection, but Beaty unequivocally testified that she will not return to Australia, even if Sam is ordered back. Petitioner's solution to this obvious disconnect is to ask the Court "to order Sam returned to Australia in Beaty's sole custody and control until and unless an Australian Family Court orders otherwise." (Motion, at 13.) This request cannot be countenanced. Even if ICARA somehow conferred authority on this Court to order a child's mother against her wishes to travel with the child back to the country of habitual residence, this Court will not order respondent to fly many thousands of miles from her home in Alabama to Australia and to remain there indefinitely and in close proximity to a man of whom she is in mortal fear.

Alternatively, petitioner urges this Court to find that Beaty's mother, Sharron Beaty, "is capable of taking Sam back to Australia so that a court there can determine his future." (Motion, at 13.) This contention takes unwarranted liberties with the record, as there is no evidence that Beaty's mother is willing to perform such an endeavor. In fact, when petitioner's counsel suggested at the hearing that she could go back to Australia with Sam if Beaty refused, Sharron Beaty responded incredulously, "And leave my family here?" When petitioner's counsel again suggested that Sharron Beaty could take care of Sam in Australia pending the Australian family court ruling, she replied, "Or you could." From these terse exchanges, there is no reason to

believe that Sharron Beaty would voluntarily accompany Sam back to Australia and take care of him there while the Australian custody proceedings were carried out.  This Court cannot and will not order her to do so, and petitioner's assertion to the contrary is not a colorable ground for seeking Rule 59 relief.

Furthermore, petitioner asserts that this Court should *sua sponte* make inquiries to unspecified persons or unspecified agencies concerning undertakings that could be made on Sam's behalf.  (Motion, at 13-14.)   Footnote 20 of the March 28 Order unequivocally states the Court's belief that it would be inappropriate to perform such inquiries unilaterally and *sua sponte*, without Eleventh Circuit precedent compelling such an approach.  (March 28 Order, at 20-21 n.20.)  The Court remains of that opinion and will not grant Rule 59 relief on that basis.

### D.     *Purported "Newly Discovered" Evidence.*

Finally, petitioner attaches to his Motion for New Trial a series of affidavits relevant to the undertakings question that he deems "newly discovered evidence."  The law is clear that "the moving party will not prevail on a Rule 59(e) motion that introduces previously unsubmitted evidence absent a showing that the evidence was unavailable at the time of the judgment." *Mincey*, 206 F.3d at 1137 n.69.  There being absolutely no indication in the record that the affidavits appended to petitioner's Motion for New Trial were unavailable at the final evidentiary hearing, they do not qualify as newly discovered evidence and cannot form the basis for Rule 59 relief.

### IV.    Conclusion.

For all of the foregoing reasons, Petitioner's Motion for New Trial, or in the Alternative, Motion to Alter or Amend Judgment (doc. 15) is **denied**.

DONE and ORDERED this 16th day of May, 2007.

s/ WILLIAM H. STEELE  
UNITED STATES DISTRICT JUDGE